*Hoffheimer, Morris & Sawyer*, Prosecuting Attorneys, for defendant in error.

---

## INJURY TO A WORKMAN FROM LIFTING HEAVILY TO SAVE HIMSELF.

[Circuit Court of Lucas County.]

PATRICK SCANLON v. LAKE SHORE & MICHIGAN SOUTHERN RY. CO.

Decided, July 1, 1902.

*Negligence—Workmen Engaged in Raising a Heavy Weight—They Lift Unevenly, Causing the Weight to Slip—One Lets Go to Save Himself—And the Man Next to Him is Strained by the Double Weight thus Thrown upon Him.*

1. The occurrence of an accident does not raise a presumption of negligence, nor if a given piece of work is undertaken in an ordinarily prudent manner does it establish negligence to point out after the accident has occurred how it might have been avoided.

2. Four men were attempting under the direction of a foreman to load upon a car a railroad frog, weighing 815 pounds. They stood two on each side. The frog was raised a little too high by the men on one side, causing it to slip toward the men on the opposite side, whereupon one of them loosened his hold in order to get out of the way, compelling his companion S to sustain the weight intended for both of them to prevent the frog from slipping further and crushing him. The severe strain injured him. *Held:* That in as much as the task was a simple one, containing no element of danger not as apparent to the employe as to the employer, and is usually performed by four men, and the strain upon S was due to the action of his fellow employes, no liability attaches to the railroad company.

HULL, J.; HAYNES, J., and PARKER, J., concur.

The action below was brought by Scanlon to recover damages for injuries which he claimed he had sustained on account of the

negligence of the railway company.   The case was heard by the
court and a jury, and, at the conclusion of the plaintiff's testi-
mony, on motion of defendant, the court directed the jury to
return a verdict in favor of the defendant, and judgment in
favor of defendant was entered upon that verdict.   This action
of the court is claimed to have been erroneous, and it is sought
to reverse the judgment.

The plaintiff was in the employ of the Lake Shore Company
and had been for some twenty-one years at the time of his injury,
which occurred in the early spring of 1899.   He had worked in
different capacities, and at the time of the injury was working
as a section man and had been so employed for something over
two years.   He was engaged at the time of his injury in assist-
ing in the lifting of a heavy cast iron frog which they were at-
tempting to load into a car, called a gondola car, and it was
alleged and claimed that the railway company was negligent in
not furnishing a sufficient force of men and in undertaking to
have this piece of iron loaded onto the car in an improper man-
ner and in not furnishing a proper and fit car for the purpose.
These are the three grounds of negligence that are complained of
against the defendant railway company.

The piece of iron was lying by the side of the track, not far
from the Lake Shore depot in the city of Toledo, at a place
called the Middle Ground.   Four men, including Scanlon, were
called by the foreman to load it in the car.   There were on the
car two other men who were there for the purpose of assisting
in loading articles on the car, but who took no part in the loading
of this piece of iron onto the car.   The men rolled the piece of
iron over the rail upon the track immediately at the rear of the
car, the end-board of the car being pushed up a foot or a foot
and a half so that this frog might be loaded in.   After it had been
rolled into the middle of the track they ended up the frog, lifted
up one end and turned it over so that one end of it rested on
the bottom of the car, the other resting in the middle of the
track, and under the end which rested on the track was placed
a block, so that it was lifted up a little in order that it might be
raised better.   After the frog was in this position the foreman
inserted in some holes which were in the frog (perhaps left there

for that purpose) some bolts, in order that the frog might be lifted with a pointed crowbar, the bolts being for the purpose of holding the bar and to keep it from slipping off the frog. After this was done the men took the bar and placed it under the bolts, two men taking hold of the bar on each side of the frog, Scanlon and a man by the name of Fanning being on one side and the two other men on the other side, and the foreman standing immediately in the rear. The men then undertook to lift up the end of the frog which was resting on the track and slide the frog into the car, one end of the frog resting on the car. Scanlon was facing the car, and Fanning, who was on the same side of the frog with him, was with his back to the car and facing Scanlon, and the two men on the other side were in a similar position. When the frog was lifted a short distance from the bed of the track (just how far does not appear exactly, but not a great ways) for some reason, probably because the side opposite to Scanlon was being lifted higher than the side he was on, the end of the frog which was resting on the car began to slip towards Scanlon and Fanning, and Fanning thereupon, according to Scanlon's testimony, let go of the bar, which he was holding with Scanlon on that side of the frog, in order that he might get out of the way of the frog, which he feared would fall on him, and came around on the other side of the bar to get another hold. This, as was claimed, threw a large part of the weight of the frog upon Scanlon, at least the weight of half of it, and he complains that the weight was so great and he was compelled to lift so much that he sustained internal injuries, the rupturing and tearing away of the muscles of his abdomen. They let the frog down on the track as soon as they could and Scanlon found himself to have been injured. The top of the frog did not slip off the car, but slipped some inches towards the side of the car on which Scanlon was.

This is a brief statement of the facts as disclosed by the record, and from which it is claimed there was evidence tending to show negligence on the part of the railway company, and that the case should, therefore, have been submitted to the jury.

It is a well settled principle of law that an employe does not assume risks which are due to the culpable negligence of his

employer, but that he does assume those risks which are fairly and reasonably incident to the employment in which he is engaged and which are not due to the negligence of his employer. As stated in a case cited by counsel for plaintiff in error, *Van Duzen Gas & G. E. Co.* v. *Schelies,* 61 Ohio St., 298:

"A servant assumes only such risks incident to his employment as will happen in the ordinarily careful management of the business of the master; such as arise from the fault of the master are not assumed, and the servant may recover for injuries therefrom, unless his own fault contributed to the accident."

It is claimed by the defendant in error that the evidence offered by the plaintiff did not tend in any respect to establish negligence on the part of the railway company; that whatever dangers there were, or risks, in this employment were open and plain to Scanlon, and that he assumed them.

One ground of negligence claimed was the kind of car that was used in this work. It appears from the record that a flatcar or a box-car had ordinarily and usually been used in doing this kind of work (the loading of frogs of different kinds) theretofore. Scanlon testified that he helped to load frogs upon that kind of a car—into a box-car, open at the side, and a flatcar, being so built that the frog might be loaded at the side. But Scanlon was not injured when he was getting this frog onto the track at the rear of the car; he sustained no injury on account of its being necessary to load this frog onto the end of the car instead of the side, and the floor of the car itself does not appear to have been any higher than the floor of a box-car, or of a flat-car, and when the end-board was raised (as it was in this case) we are unable to see how this car was unfit for this use or why it was not as well fitted for the loading of a frog into as a flat-car or a box-car. The end-board was raised sufficiently high to clear the frog, and the difficulty seems to have been that the frog, for some reason, slipped or slid along the edge of the floor of the car, causing Fanning to let go, as has been stated, and resulting in the injury of Scanlon.

We are of the opinion that there was nothing in the evidence to show that there was any negligence on the part of the railway company in using this kind of a car. They were not bound

under the rules of law to use the very best appliances in the way of a car; they were bound to use ordinary care, and if, at this time, they had a car of this kind which they desired to use for this purpose and if, for some reason, they did not wish to use another kind of a car, or did not have the other kind at hand, we see nothing in that to constitute negligence on the part of the railway company; in fact, we are unable to see why this car was not as safe for the loading of this frog as a box-car or a flat-car would have been.

It is claimed further, that the force of men was insufficient to do this work. Four men were engaged in lifting the frog, which weighed about 800 pounds, perhaps exactly, 815 pounds. They seemed to have had no special difficulty in rolling it over the rail onto the track, nor in "ending it up" so that one end rested on the rear of the car and the other on the railroad track, in fact, there was no trouble until this occurrence; until the sliding of the frog and Fanning letting go of the bar as has been stated. Now it does not seem to us that such an occurrence as this was one that it had ever been the practice to have these men stationed that the railway company was bound to anticipate in the exercise of ordinary care. Four men were all, apparently, that could well use the bar that was placed under the frog, two on each side, and if the frog had not slipped there would have been no difficulty in lifting the end of the frog and shoving it into the car, and if one side of the frog had not been lifted higher than the other side it is pretty clear that the frog would not have slipped. And it does not seem to us that such an occurrence as this was a thing that could reasonably have been anticipated by the railway company. The foreman was standing immediately in the rear of the men and the frog, so that he might render assistance when the end of the frog was lifted—that he might assist in shoving it into the car. If Fanning had not let go, the weight of the frog would not have been thrown upon Scanlon as it was. It might not have been negligence in Fanning to let go; probably it was not, he seeing the frog slipping towards him, probably acted in a natural way in letting go of the bar; but, be that as it may, it appears that whatever did happen there was on account of the acts of fellow servants of Scanlon, whether it was negligence or whether it was an act of poor judgment, or what-

ever it may have been, his injury was due to the acts and con-
duct of the men, of the fellow servants who were assisting him
in the doing of this work.   It is, of course, well established  that
an employer is not liable for injuries caused entirely by the neg-
ligent acts of a fellow servant.

It is urged that the company ought to have had men on the
rear of the car to take hold of the frog and prevent it from slip-
ping, in case anything of this kind occurred.   It does not appear
there; it does not appear that there had ever been an accident
of this kind before.   It was an ordinary, simple piece of work,
the picking up of this piece of iron, this iron frog, ending it up
and shoving it into the car—as simple a piece of work as loading
a timber onto a wagon, or a log onto a sled or the loading of any
other heavy object into a vehicle; and the company seems to
have proceeded, as it seems to us, in a way that a person of
ordinary prudence would have proceeded, and we think that
there was no evidence offered tending to show negligence on the
part of the company in this respect.   Four men seem to have
been ample to roll the frog onto the track and seem sufficient
to end it up and to have been strong enough to put it into the car.
The trouble came from the frog slipping and sliding as these men
lifted it.   That was something that could have been anticipated
by Scanlon as well as by the railway company.   Injuries are
liable to happen to men when they are engaged in work of this
kind, but if that is as apparent to the employe as it is to the
employer, if the employe has as much knowledge of the danger
as the employer has, the employer is not liable if something of
this kind occurs without negligence on the part of the employe.

This question is discussed in a Michigan case, *Nephew* v.
*Whitehead,* 123 Mich., 255 (81 N. W. Rep., 1083), a case where
the facts were quite similar to the facts here.   The syllabus is:

"An employe, experienced in handling heavy objects, can not
recover against his employer for injuries received by being
struck by an iron beam which he was assisting to unload from
a wagon on which he had helped to load it; the operation being
a simple one, and the employer having no knowledge of danger
that the employe did not himself possess."

The court say, in the opinion:

"The raising was done by six men standing alongside of the

beam behind the wagon, who lifted the beam until it was even with the top of the wheel, and then pushed or threw it over. The beam rested, perhaps momentarily, on the wheel. Being thus at an angle with the length of the wagon, the beam, in falling, cleared the wheels. Plaintiff was one of the six men thus employed. They all stood on the side of the beam opposite to the direction in which it was to go. The beam was lifted to the top of the wheel, but as it was pushed over, plaintiff, in some way unexplained by the evidence, was struck by the beam and injured. The beam went beyond the wheel, as it was intended. The plaintiff brought this suit to recover for the injuries thus received. The circuit judge directed a verdict for the defendant. The plaintiff brought the case here by appeal.

"If the plaintiff can recover in this case, an employer of labor would be liable whenever an accident occurred. The operation to be performed was a simple one. With the experience plaintiff must have had in handling heavy objects, he must have known as much about the danger involved in the unloading of these beams as any one." (Citing authorities). "We do not deem it necessary to discuss the case."

Scanlon, although he testifies he had never assisted in lifting a frog as large as this one and did not know the weight of this frog, still was an experienced railroad man and had worked for the railway company for some twenty-one years and had had experience in lifting frogs of the same character, though perhaps not quite so large, but it is clear that he knew that a chunk of iron of the size of this one was heavy and that it would require rather heavy lifting, and it would be apparent to any one that if, in the course of lifting such a piece of iron onto the car, one of the men should let go of the bar, as happened in this case, that it would throw the weight upon the man who still retained his hold upon the bar. This was something liable to occur. The proper carrying on of the work depended, as it always does, upon each man who was engaged in it performing his part. One of the risks that the employe takes is that his fellow servants— fellow employes—who are without any authority over him, will do their duty in the carrying on of the work.

It seems to us that this case comes fairly within the principle of the case decided by the Supreme Court of Michigan to which I have referred. The transaction here, as in that case, was a simple one—the loading of an object onto a car; and, unfor-

tunately, in the doing of it Scanlon was injured, but without, so far as we can see, any negligence on the part of the railway company.

In this case, as in many other cases, it is easy after the injury has been done to point out how it might have been avoided. If there had been men on the car, taking hold of this frog so as to prevent its sliding, perhaps Scanlon might not have been injured. Still he might, for he was injured by reason of Fanning letting go of the bar, but Fanning let go of the bar on account of the frog's slipping, as it was said. Although we may look back at the occurrence and see how it might have been avoided, that does not necessarily show that the railway company was guilty of negligence in not providing the means for avoiding it. If appliances were always provided so that an accident could not happen, of course no one would ever be injured. But accidents do occur in the performance of work of this kind and men are injured without any negligence on the part of any one. The mere fact that a man is injured does not show that any one has been guilty of negligence.

We have examined the testimony in the case offered by the plaintiff with a great deal of care and given consideration to the authorities and arguments urged by counsel for the plaintiff in error, and we are unable to find that the court erred in directing a verdict for the defendant.

The third ground of negligence, already discussed without mentioning it specifically, that the frog was not being raised in a proper manner, I need not discuss further. It seems to us that the work was being carried on in a proper manner and in the way that men of ordinary care and prudence would have carried it on, and that which occurred was an accident, and can not be denominated anything but an accident. Unfortunately, Scanlon was injured on account of it. We are unable to see any liability on the part of defendant, and the judgmnt of the court of common pleas is affirmed.

*Orville S. Brumback,* for plaintiff in error.
*Emory D. Potter,* for defendant in error.